IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JONATHAN PUCKETT (#156317), | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:15-cv-2029-D-BN |
| WALMART STORE #5823, ET AL., | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jonathan Puckett, at the time a pretrial detainee at the Dallas County

jail, brought this *pro se* civil rights action under 42 U.S.C. § 1983 centered on his

December 2014 arrest and related events against numerous individuals and entities.

It was referred to the undersigned United States magistrate judge for screening under

28 U.S.C. § 636(b) and a standing order of reference from United States District Judge

Sidney A. Fitzwater. Because Puckett's state criminal proceedings were ongoing, the

Court stayed and administratively closed this action on September 10, 2015. On

Puckett's motion, it now has been reopened and re-referred to the undersigned for

further screening. And the undersigned issues these findings of fact, conclusions of law,

and recommendation that, for the following reasons and to the extent set out below, the

Court should dismiss this action with prejudice.

**Applicable Background**

Puckett first asserts claims based on excessive force – under various theories of

liability – alleging that he was slammed to the ground and shot twice by Officer Larry Moody, an off-duty Dallas police officer working store security at a Wal-Mart store located at 6185 Retail Road, in Dallas, Texas, on December 16, 2014. *See* Dkt. No. 3; Dkt. No. 4 at 1-2, 6-10, 37-40. These claims are asserted against the officer, the particular Wal-Mart store, managers at that store, Wal-Mart Stores, Inc., Sam's Club, corporate officers of Wal-Mart, other Dallas police officers (including then-Chief David O. Brown), the Dallas Police Department, the City of Dallas, and Dallas County. *See id.*

Puckett also asserts related claims based on media coverage of his arrest, *see* Dkt. No. 4 at 3, 16, and claims that he was unlawfully detained following the arrest, *see id.* at 2-3, 12-15. Relatedly, he asserts claims against two state prosecutors, his defense counsel, and the state trial judge concerning the criminal proceedings that followed his arrest. *See id.* at 4, 11.

Puckett further claims that, while he was detained, an officer at the jail threatened and intimidated him and that individuals associated with the jail tampered with his legal mail. *See id.* at 3, 17-25, 36 And he brings claims of medical negligence against Parkland Hospital and medical providers at the jail. *See id.* at 4, 26-35.

After his arrest, Puckett was indicted for aggravated assault on a public servant, a first-degree felony. He pleaded *nolo contendere*. And, on May 30, 2017, he was sentenced to 12 years of imprisonment. *See State v. Puckett*, No. F14-61028-K (Crim. Dist. Ct. No. 4, Dallas Cty. Tex.). There was no direct appeal. But, based on state criminal records accessible online, Puckett is currently seeking habeas relief in the

state courts. *See Ex parte Puckett*, No. W14-61028-K(A) (Crim. Dist. Ct. No. 4, Dallas Cty. Tex.); *Ex parte Puckett*, WR-87,314-01 (Tex. Crim. App. Sept. 13, 2017) (remanding writ to the trial court to make findings of fact as to ineffective-assistance-of-counsel claims).

## Legal Standards

A district court is required to screen a civil action brought by a prisoner – whether he is incarcerated or detained prior to trial – seeking relief from a governmental entity or employee. *See* 28 U.S.C. § 1915A(a), (c). On initial screening, the Court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, that:

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

*Id.* § 1915A(b). Under 28 U.S.C. § 1915(e)(2)(B), also applicable here, a district court may summarily dismiss any complaint filed *in forma pauperis* – not limited to complaints filed by prisoners seeking relief from a governmental entity or employee – for the same reasons. *Cf. Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (verified responses to interrogatories issued to "[t]o aid in the determination of whether an IFP complaint is frivolous," "become part of the plaintiff's pleadings" (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996))).

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th

Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam); emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. Indeed, to survive dismissal under the now-familiar framework of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that he contends entitle him to relief. *Johnson*, 135 S. Ct. at 347 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)).

The rationale that factual plausibility (as opposed to legal labeling) controls the failure-to-state-a-claim analysis has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013

WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

In conducting the failure-to-state-a-claim analysis, "it is clearly proper ... to take judicial notice of matters of public record," *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008), such as adjudicative facts apparent from "state court criminal records," *Land v. Stone*, No 3:10-cv-981-B-BK, 2010 WL 5538413, at *4 (N.D. Tex. Dec. 14, 2010) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998)); *see also* FED. R. EVID. 201.

## Analysis

Puckett's claims and allegations fall into two broad categories. The first contains those claims and assertions that directly relate to his arrest and the resulting criminal prosecution. This category includes Puckett's excessive force claim, claims based on media coverage of his arrest, his unlawful detention and arraignment claims, and the claims asserted against the prosecutors, his defense counsel, and the state trial judge. The second category is made up of those claims and allegations not directly related to his conviction but instead related to the conditions of his pretrial confinement.

I.  <u>Claims and allegations directly related to criminal conviction</u>

### A.    **Vicarious Liability**

Puckett asserts that then-Dallas Police Chief Brown, the City of Dallas, Dallas County Sheriff Lupe Valdez, supervisory deputy sheriffs, and Dallas County are all vicariously liable for the alleged harms that occurred to him.

It is clearly established that "[a] municipality" – like the City and the County – "and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted).

To assert liability under *Monell*, Puckett must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also id.* ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" (quoting *Piotrowski*, 237 F.3d at 578)).

Relatedly, "[u]nder § 1983, officials are not vicariously liable for the conduct of those under their supervision" – instead, "[s]upervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)); *see also Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015) ("Relying on *Monell*, 'we have held that supervisory officials may not be found vicariously liable for the actions of their subordinates under § 1983.'" (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc); citation omitted)).

Because Puckett fails to allege that his rights were violated under an official policy of either the City or the County, he has not alleged a plausible claim against the municipalities or their policymakers. Likewise, because Puckett only alleges that supervisory defendants are liable based on the actions of their subordinates, he has failed to allege plausible claims against those defendants, as Section 1983 "does not give a cause of action based on the conduct of subordinates." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). "Instead, under § 1983, 'each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *Hinojosa*, 807 F.3d at 668 (quoting *Iqbal*, 556 U.S. at 677).

### B.      Non-Jural Entities

Puckett names as defendants the following agencies and/or departments: the Dallas Police Department, that department's Internal Affairs Division, and the Dallas County Jail.

A plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313.

As this Court has repeatedly recognized, the Dallas Police Department is not a jural entity subject to suit. *See, e.g., Hagwood v. Dallas Police Dep't*, No. 3:15-cv-2622-L-BN, 2015 WL 6688721, at *3 (N.D. Tex. Sept. 11, 2015), *rec. accepted*, 2015 WL

6690045 (N.D. Tex. Oct. 30, 2015); *see also Combs v. City of Dallas*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the DPD as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate and distinct entity" (citing *Darby*, 939 F.2d at 313)).

Logically, neither is a division within the DPD a jural entity. Nor is the Dallas County Jail a jural entity. *See, e.g., Gonzales v. Lew Sterrett Dallas Cty. Jail*, No. 3:08-cv-1510-D, 2008 WL 4921428, at *2-*3 (N.D. Tex. Nov. 13, 2008) (collecting cases).

Puckett therefore has not stated plausible claims against these defendants.

## C.  Prosecutors and Judges

Puckett has sued then-Dallas County District Attorney Susan Hawk and the assistant district attorney who prosecuted his case, as well as the state trial judge, all in their respective roles as prosecutors and as a judge. *See* Dkt. No. 3 at 4, 15.

Judges generally have absolute immunity for judicial actions taken within the scope of their jurisdiction, which also means that judicial officers are generally immune from suits for money damages. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009). "Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "A judge's acts are judicial in nature if they are normally

performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Id.* at 285 (internal quotation marks omitted). "[J]udicial immunity is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, and "[d]isagreeing with a judge's actions does not justify depriving that judge of his or her immunity," *Greenlee v. U.S. Dist. Court*, No. 09-2243-cv-FJG, 2009 WL 1424514, at *2 (D. Kan. May 21, 2009) (citing *Stump*, 435 U.S. at 363).

State prosecutors are absolutely immune from a suit for damages for actions taken within the scope of their duties as prosecutors. *See Imbler v. Pachtman*, 424 U.S. 409, 420-24 (1976); *see also Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 n.2 (5th Cir. 2000) ("As to prosecutors, entitlement [to immunity] flows from performance of activities that are intimately associated with the judicial process, such as initiating and prosecuting a criminal case." (citing *Imbler*, 424 U.S. at 430)). A plaintiff "may overcome a defendant's prosecutorial immunity by alleging actions that fall outside 'initiating the prosecution and in carrying the case through the judicial process.'" *DeLeon v. City of Dallas*, No. 3:02-cv-1097-K, 2003 WL 22244773, at *1 (N.D. Tex. Sept. 16, 2003) (quoting *Boyd*, 31 F.3d at 285), *reversed in part on other grounds*, 141 F. App'x 258 (5th Cir. 2005).

> Prosecutorial immunity, however, applies even if the prosecutor is accused of knowingly using perjured testimony, withholding exculpatory evidence, and failing to make full disclosures of facts. State prosecutors are absolutely immune for their actions intimately associated with the judicial process, including their actions in seeking the issuance of an arrest warrant.

*Id.* (citations and quotation marks omitted); *see Bibb v. Montgomery Cty. Sheriff*, Civ.

A. No. H-13-3736, 2014 WL 3828232, at *8 (S.D. Tex. July 30, 2014) ("[A] prosecutor is entitled to absolute immunity for his action in commencing a prosecution and all actions during the course and scope of the prosecution, even against charges that he acted 'maliciously, wantonly, or negligently.'" (quoting *Imbler*, 424 U.S. at 430-31)).

Because Puckett alleges no specific facts to show that any of these defendants acted outside of the scope of their respective duties, Puckett has not overcome the absolute immunity that attaches to judges and prosecutors acting within their jurisdiction. And his claims against these defendants should be dismissed with prejudice.

He also has sued a Dallas County magistrate, claiming that his right to an arraignment within 72 hours was violated. *See* Dkt. No. 3 at 4, 12. But

> [n]either the laws nor the Constitution of the United States recognize or require an arraignment within 72 hours of a person's arrest. In *County v. Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Supreme Court held that a determination by a judicial officer of probable cause for an arrestee's continued confinement must ordinarily be made within 48 hours of the person's arrest. However, there is no correlative right to a speedy arraignment.

*Jenkins v. Henslee*, No. 3:01-cv-1996-R, 2002 WL 432948, at *2 (N.D. Tex. Mar. 15, 2002); *see also Jones v. Lowndes Cty., Miss.*, No. 1:09-cv-87-SA-JAD, 2010 WL 4643242, at *4 (N.D. Miss. Nov. 9, 2010) ("The Fourth Amendment's promptness requirement – as it was developed in *Gerstein[ v. Pugh*, 420 U.S. 103 (1975)] and *McLaughlin* – concerns the length of detention after a warrantless arrest before a determination of probable cause by a neutral magistrate. *Gerstein* and its progeny do not require that criminal defendants be arraigned or make an initial appearance within forty-eight

hours of arrest. Rather, they require that those detained pursuant to a warrantless arrest receive a prompt determination of probable cause." (citations omitted)), *aff'd*, 678 F.3d 344 (5th Cir. 2012). This claim should therefore be dismissed with prejudice.

### D.    Non-State Actors

Puckett has sued various defendants that are not obvious state actors, namely the Wal-Mart entities, officers, and employees and his defense counsel.

To state a claim under Section 1983, "a plaintiff must allege facts showing that he has been 'deprived of a right secured by the Constitution and the laws of the United States,' and that the deprivation was caused by a person or persons 'acting under color of state law.'" *Burroughs v. Shared Housing Ctr.*, No. 3:15-cv-333-N-BN, 2015 WL 4077216, at *2 (N.D. Tex. June 17, 2015) (quoting *Bass v. Parkwood Hosp.,* 180 F.3d 234, 241 (5th Cir. 1999)), *rec. accepted*, 2015 WL 4089756 (N.D. Tex. July 6, 2015). And

> "[p]rivate individuals generally are not considered to act under color of law," *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), but "private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State,'" *Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004) (quoting *Bass*, 180 F.3d at 241).

*Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (citation modified); *see also Singleton v. St. Charles Parish Sheriff's Dep't*, 306 F. App'x 195, 198-99 (5th Cir. 2009) (per curiam) ("A private actor ... is subject to constitutional liability when 'such a close nexus between the State and the challenged action exists that seemingly private behavior may be fairly treated as that of the State itself,'" an "inquiry [that] is 'highly circumstantial and far from precise.'" (quoting *Morris v. Dillard's Dep't Store, Inc.*, 277 F.3d 743, 747-48 (5th Cir. 2001); citation omitted)).

Taking Puckett's defense-attorney claim first, defense attorneys, whether public defenders or private attorneys, are not "state actors" and cannot be sued under Section 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 324-25 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) ("[P]rivate attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983."); *cf. Sellers v. Haney*, 639 F. App'x 276, 277 (5th Cir. 2016) (per curiam) ("The district court properly concluded that Sellers's defense attorneys were not state actors." (citing *Dodson*, 454 U.S. at 317-18)). And Puckett alleges no facts to show that his counsel during the state criminal action, conspired with state actors to deprive Puckett of constitutional rights. *See Mills*, 837 F.2d at 679. Accordingly, Puckett has not stated a plausible claim against his former defense counsel.

> [Turning to] the retail context, "a merchant is not a state actor unless the conduct on the part of a guard or officer giving rise to the claimed deprivation occurred based solely on designation of suspicion by the merchant and was not accompanied by any independent investigation by the officer." This test is designed to determine if "the police pursuant to a preconceived plan, would arrest any person merely because he was designated for arrest by the store." An officer is allowed to rely on the report of suspicion by a store employee if he also conducts an independent investigation.

*Singleton*, 306 F. App'x at 199 (quoting *Morris*, 277 F.3d at 747).

> For example, in *Smith v. Brookshire Bros., Inc.*, the plaintiffs showed that pursuant to a prearranged plan, the defendant, a grocery store, "could have people detained [for shoplifting] merely by calling the police and designating the detainee." 519 F.2d 93, 94 (5th Cir. 1975) (per curiam). In *Bartholomew v. Lee*, on the other hand, the fact that "the plaintiffs

were arrested in part ... at the request of the [mall] security personnel, and not wholly based on any independent observations of the officers," was not enough to show joint action between the mall and the police. 889 F.2d 62, 63 (5th Cir. 1989).

*Farrell*, 868 F.3d at 353 (emphasis omitted).

The affidavit of Officer Moody in support of Puckett's arrest warrant sets out that a Wal-Mart employee alerted Officer Moody that a shoplifting offense had been committed by Puckett, which led Officer Moody to confront Puckett after he walked out of the store, but Puckett's stabbing of that officer – the action that underlies the state conviction related to his claim of deliberate indifference – occurred after the officer was walking Puckett back into the store. *See Puckett*, No. F14-61028-K (affidavit attached to the indictment). The arrest of Puckett was therefore clearly not based on a preconceived plan or solely dependent on actions taken by Wal-Mart employees. Accordingly, Puckett has not alleged a close nexus between actions taken by Wal-Mart or its employees and Puckett's arrest or related allegations that his constitutional rights have been violated. Puckett therefore fails to state plausible claims against the named defendants associated with Wal-Mart.

### E.    *Heck* Bar

To the extent that Puckett's Section 1983 claims based on allegations related to his criminal conviction should not be dismissed based on (1) *Monell* or a lack of supervisory liability, or (2) an entity's lack of a separate and distinct legal existence, or (3) a defendant's right to absolute immunity, or (4) Puckett's failure to state a claim, or (5) the lack of State action, those claims should be dismiss as frivolous because they

are "necessarily inconsistent with the validity of [his] conviction," *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (cited in *Bush v. Strain*, 513 F.3d 492, 498 n.14 (5th Cir. 2008)) – a conviction that has not been reversed on direct appeal, expunged by executive order, or otherwise declared invalid by a state tribunal or federal court, *see Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) ("A § 1983 claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." (citation omitted)).

"The *Heck* court held that a civil tort action, including an action under section 1983, is not an appropriate vehicle for challenging the validity of outstanding criminal judgments." *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007) (citing *Heck*, 512 U.S. at 486); *see id.* at 654 (in this circuit, "*Heck* stands first for 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments'" (quoting *Heck*, 512 U.S. at 486)).

> *Heck* prohibits a plaintiff from using a § 1983 suit to challenge the validity of his conviction or sentence, unless the plaintiff demonstrates that the conviction or sentence has in some way been reversed or invalidated. *Bush*, 513 F.3d at 497. Consequently, "a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *DeLeon*, 488 F.3d at 498 n.14 (alteration omitted) (quoting *McCann*, 466 F.3d at 621); *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). This is because "factual assertions in pleadings are ... judicial admissions conclusively binding on the party that made them." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (alterations and citation omitted).

*Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 286 (5th Cir. 2013) (per curiam) (citations modified).

As to the allegedly excessive use of force here, Puckett alleges that he "was attacked from behind by someone unknown, slammed to the ground multiple times, then subsequently shot twice by [Officer Moody]." Dkt. No. 3 at 4; *see* Dkt. No. 4 (alleging that Officer Moody "did grab and push [Puckett] down from behind with no visual or verbal declaration of identity or intent" and "then slammed [Puckett] down multiple times, before subsequently shooting [Puckett] twice"). These allegations are not consistent with Officer Moody's version of the incident as reflected in his affidavit attached to the indictment that led to Puckett's conviction, which provides that, after Puckett attempted to flee, Officer Moody pursued him; a physical struggle followed; Puckett cut Moody's hand with a knife during that struggle; Moody then drew his gun and fired multiple times, striking Puckett in the leg; and, after a standoff, Puckett dropped his knife and surrendered.

Puckett's allegations also assert that he acted lawfully. And where a plaintiff "maintain[s] that he acted without fault throughout the entirety of his encounter with the police, his excessive force claim 'squarely challenge[s] the factual determination that underlies his conviction for [aggravated assault of a public servant] and thus [is] barred by *Heck*." *Thomas v. Pohlmann*, 681 F. App'x 401, 407 (5th Cir. 2017) (per curiam) (concerning a resisting-an-officer conviction; quoting *Arnold v. Town of Slaughter*, 100 F. App'x 321, 324-25 (5th Cir. 2004) (per curiam); citing *Daigre*, 549 F. App'x at 286-87; *DeLeon*, 488 F.3d at 656-57); *accord Whatley v. Coffin*, 496 F. App'x

414, 417 (5th Cir. 2012) (per curiam) ("[A]ccepting the version of events alleged by Whatley, his § 1983 claims were necessarily inconsistent with his assault of a public servant convictions and thus are barred by *Heck*." (citing *DeLeon*, 488 F.3d at 656-57)).

Because Puckett stands convicted of the offense for which he was arrested, his claims based on allegedly being denied counsel, *see* Dkt. No. 4 at 11, and that he was unlawfully detained pretrial, *see id.* at 13-15, are also barred by *Heck*. *See, e.g., Pena-Ordonez v. City of Farmers Branch Police Dep't*, No. 3:13-cv-420-M-BN, 2013 WL 1187277, at *4 (N.D. Tex. Feb. 27, 2013), *rec. accepted*, 2013 WL 1189231 (N.D. Tex. Mar. 21, 2013) (collecting cases).

Further, to the extent that Puckett asserts non-constitutional claims based on the same allegations, such as claims related to media coverage of his arrest, *see* Dkt. No. 4 at 3, 16, those claims are also barred by *Heck*. Although typically applied in the context of Section 1983, *Heck*'s logic extends outside of constitutional claims and applies to any claim – including state-law claims – based on factual allegations that are necessarily inconsistent with the validity of a conviction that has been neither reversed, expunged, nor otherwise declared invalid. *See Thomas v. La., Dep't of Soc. Servs.*, 406 F. App'x 890, 898 (5th Cir. 2010) (per curiam) ("because proof of [plaintiff's state law] claims requires proof that [her arrest and criminal conviction] were unlawful …, the favorable termination rule bars her state law … claims" (citation omitted)).[1] By

---

[1] *See also Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515 (M.D. La. 2013) ("As a successful ruling on Ms. Elphage's state law claims for false arrest and imprisonment would undermine her conviction for resisting an officer, her claims are barred by *Heck*." (citations omitted)); *Nelson v. Nordyke*, No. 3:07-cv-1007-M,

focusing on the facts alleged and whether those allegations are necessarily inconsistent with the criminal conviction that has neither been reversed nor invalidated – not how a plaintiff has labeled the claims based on those facts – the logical extension of *Heck* beyond Section 1983 is consistent with the established pleading requirements. *See Johnson*, 135 S. Ct. at 346-47.

The undersigned's recommendation that all claims asserted in this action should be dismissed with prejudice is consistent with how *Heck*-barred claims are typically handled, as those claims generally are dismissed with prejudice to their being asserted again until the *Heck* conditions are met.

## II. Claims and allegations based on conditions of pretrial confinement

Separate from claims factually dependent on the validity of his unchallenged conviction, Puckett brings claims concerning his pretrial detention at the Dallas County jail.

### A. 42 U.S.C. § 1997e(e)

Puckett first alleges that employees at the jail tampered with his mail and/or legal documents. *See* Dkt. No. 4 at 17-25. And he alleges that a guard at the jail threatened and intimidated him. *See id.* at 36. Both claims, under which Puckett seeks

---

2009 WL 648889, at *4 (N.D. Tex. Mar. 10, 2009) ("Officer Jamaica's motion for summary judgment should be granted with respect to Plaintiff's civil rights claims of false arrest and false detention and the corresponding pendant state law claims because those claims are *Heck*-barred, as well, and they should be dismissed until *Heck* conditions are met."); *Lavergne v. Martinez*, Civ. A. No. 6:13-2121, 2014 WL 897837, at *5 n.2 (W.D. La. Mar. 6, 2014) (discussing authority applying *Heck* to bar state law claims)

monetary damages, are barred by 42 U.S.C. § 1997e(e) because Puckett fails to allege

a physical injury resulted from these alleged actions.

The Fifth Circuit for the first time in *Geiger v. Jowers*, 404 F.3d 371 (5th Cir.

2005) (per curiam), directly considered whether the Prison Litigation Reform Act's (the

"PLRA") "physical injury requirement," 42 U.S.C. § 1997e(e), which bars "recovery of

compensatory damages for mental and emotional injuries (absent physical injury),"

applies to, for example, First Amendment claims, and the Court of Appeals agreed

> with the majority of the other federal circuits that have addressed this
> issue in holding that it is the nature of the relief sought, and not the
> underlying substantive violation, that controls: Section 1997e(e) applies
> to all federal civil actions in which a prisoner alleges a constitutional
> violation, making compensatory damages for mental or emotional injuries
> non-recoverable, absent physical injury.

404 F.3d at 374-75 (footnotes omitted).

As noted in *Geiger*, "it is of no consequence whether [a plaintiff] alleges a

deprivation of property by negligence or intent; in neither instance does he state a valid

§ 1983 action for deprivation of property." *Id.* at 374; *see Denson v. England*, No.

2:07-cv-185, 2008 WL 59171, at *2 (N.D. Tex. Jan. 3, 2008) (rejecting as frivolous a

constitutional claim that a prison official "intentionally and wrongly kept [a prisoner's]

property" (citing *Geiger*, 404 F.3d at 374)); *accord Steele v. Brown*, No. 3:16-cv-1116-N,

2016 WL 2855584 (N.D. Tex. Apr. 27, 2016), *rec. accepted*, 2016 WL 2827044 (N.D. Tex.

May 13, 2016).

Similarly, "mere threatening language and gestures of a custodial office[r] do

not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d

143, 146 (5th Cir. 1983); *accord Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997); *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999); *see also Mendez v. Johnson*, Civ. A. No. H-14-2507, 2014 WL 4782726, at *4 (S.D. Tex. Sept. 23, 2014) ("Mere verbal abuse, even if accompanied by threats of physical harm, does not amount to a constitutional violation if there is no physical injury." (citation omitted)).

Further, to the extent that Puckett seeks more than monetary relief based on these claims, his "transfer mooted his claims for declaratory and injunctive relief ... , and the possibility of his transfer back to the [Dallas County jail] is too speculative to warrant relief." *Coleman v. Lincoln Parish Det. Ctr.*, 858 F.3d 307, 309 (5 th Cir. 2017) (per curiam) (citing *Cooper v. Sheriff, Lubbock Cty.*, 929 F.2d 1078, 1084 (5th Cir. 1991); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)); *see also Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) ("The transfer of a prisoner out of an institution often will render his claims for injunctive relief moot" unless he "can show either a 'demonstrated probability' or a 'reasonable expectation' that he will be transferred back to the facility." (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982))).

## B.    Medical Treatment

Puckett alleges that, while he was detained at the jail, the management of his pain and the physical therapy he received were not to his satisfaction. *See* Dkt. No. 4 at 26-35. He labels these medically-related claims as "negligence" *See id.* at 4, 5, 26. Mere negligence does not, of course, amount to deliberate indifference and is insufficient to establish a constitutional violation.

But, to the extent that Puckett is alleging a constitutional violation under the

Eighth Amendment's deliberate indifference standard, he must show that jail officials acted with deliberate indifference such as to cause the "'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Delays in providing medical care do not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). And an incorrect diagnosis, a disagreement with medical treatment, or a failure to provide additional medical treatment – alone – does not constitute deliberate indifference. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (to establish an Eighth Amendment violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs").

Puckett fails to allege an Eighth Amendment violation. The multiple grievance forms included in his complaint establish that his medical concerns were repeatedly addressed, *see* Dkt. No. 4 at 29, 31, 35, and Puckett fails to allege facts to show that a substantial harm resulted from his disagreement with the medical care he received while detained pretrial, *see Houston v. Dunn*, 487 F. App'x 164, 165 (5th Cir. 2012) (per curiam) ("Houston's assertions, accepted as true, show that he experienced a two-hour delay in receiving treatment, not a denial of treatment, and his condition was treated by a doctor. Thus, he fails to state a claim for which relief can be granted." (citations

omitted)); *Stephens v. Scott*, 244 F. App'x 603, 606 (5th Cir. 2007) (per curiam) ("The district court correctly dismissed the claims, noting that the medical records show Stephens was treated within three hours of his encounter with police and that there was no allegation that the delay resulted in substantial harm." (citation omitted)).

## Recommendation

The Court should dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 6, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE